UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MARTEZ ROSE'MAN
WOODS/MACON,

    Plaintiff,

  v.                                         CAUSE NO. 3:22-CV-442-DRL-MGG

INDIANA DEPT OF CORRECTION *et al.*,

    Defendants.

## OPINION AND ORDER

Martez Rose'man Woods/Macon, a prisoner without a lawyer, filed an "Emergency Action Prisoner Complaint" against thirty defendants asserting a variety of alleged wrongs. ECF 2. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Under 28 U.S.C. § 1915A, the court still must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Mr. Woods/Macon's complaint is somewhat confusing; he does not explain what happened to him in a chronological order but instead organizes his complaint by defendant, making it difficult for the reader to piece together what occurred, when it occurred, or how the various allegations relate to one another. In a nutshell, Mr.

Woods/Macon believes he has suffered from a parasite infection since November 2021. He has been assessed by numerous medical providers and has undergone various tests to determine the nature of his complaints. He has been advised that the test results are normal, and his problem is one to be addressed by the mental health staff. Mr. Woods/Macon, however, takes issue with the assertion that his tests are normal and the conclusion that his belief that he suffers from a parasite infection stems from a mental health disorder, not an actual parasitic infection.[1] He seeks fifteen million dollars in damages for his pain and suffering. He also asks that Centurion Health Services be investigated and that each defendant named in this lawsuit be immediately fired.

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do

---

[1] "People with delusional parasitosis have an unshakable, false belief that they are infested with insects, worms, mites, lice, fleas, or other organisms."
https://www.merckmanuals.com/home/skin-disorders/parasitic-skin-infections/delusional-parasitosis (last visited June 15, 2022).

anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Neither negligence nor medical malpractice constitute deliberate indifference. *Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Courts generally "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and internal quotation marks omitted).

The court has attempted to piece together what happened based on the various dates scattered throughout Mr. Woods/Macon's complaint. Mr. Woods/Macon believes he became infected with a parasite in November 2021, although he does not describe what symptoms initially led him to believe he had a parasite infection as opposed to some other medical condition. On December 3, 2021, Mr. Woods/Macon saw a medical provider

3

named Diane and she agreed to order blood work, but she did not order the blood work. Instead, Dr. Nancy Marthakis ordered that blood work be performed fourteen days later, on December 17, 2021. Mr. Woods/Macon is unhappy with the delay caused by Diane's failure to promptly order the blood work.

On December 22, 2021, Sgt. Bauer called a medical signal because he thought Mr. Woods/Macon was unresponsive, although Mr. Woods/Macon indicates he was not unresponsive. Mr. Woods/Macon indicates he was in pain because of the parasite infection. He further claims he was administered Narcan on this day but there is no record of the administration of Narcan. Following the alleged administration of Narcan, Mr. Woods/Macon was led to MSU. He further claims Nurse Lacey R. Gorske wrote a false report on December 22, 2021. It is not entirely clear, but it seems her report indicated that he was evaluated and treated after the initial encounter following the signal, but Mr. Woods/Macon says he was simply thrown in a holding cell for hours.

Mr. Woods/Macon was next seen by Todd Wolford on January 13, 2022. Mr. Wolford told Mr. Woods/Macon that the results of his blood work were normal, although Mr. Woods/Macon alleges that the results reflected many abnormalities. Mr. Wolford then explained to Mr. Woods/Macon that what he was experiencing was a part of a mental health episode. Mr. Woods/Macon told Mr. Wolford that the parasite infection was real: he knows "because this thing crawls around inside of [his] testicles and everywhere else in [his] body." ECF 2 at 6. Mr. Wolford assured Mr. Woods/Macon that his testicles looked normal, but Mr. Woods/Macon pointed out an area of discoloration that, in his opinion, was not normal.

On January 14, 2022, Mr. Woods/Macon was again permitted to go to the medical department. He wanted to be seen by someone other than Mr. Wolford. It is unclear what occurred that day, but Mr. Woods/Macon claims that Correctional Officer Huelett wrote him up on two "bogus" conduct reports. ECF 2 at 10.

On January 26, 2022, Mr. Wolford and Mr. Woods/Macon discussed whether additional tests would be ordered to diagnose the parasite infection definitively. Mr. Wolford would not order any additional tests because he did not believe Mr. Woods/Macon had a parasite infection; rather, he believed it was all a figment of Mr. Woods/Macon's imagination and he needed mental health treatment. Mr. Wolford and Nurse Jackie directed Mr. Woods/Macon to go see the psychiatrist, Dr. Martin. Mr. Woods/Macon was taken to see Dr. Martin right away. Dr. Martin reviewed the results from the blood test and assured Mr. Woods/Macon that everything was okay. Dr. Martin told Mr. Woods/Macon that, to be seen by a mental health care provider, he would need to submit a request for health care. Mr. Woods/Macon submitted the health care request, but the response to the request stated he had already had an appointment on February 10, 2022. Mr. Woods/Macon denies having an appointment on February 10, 2022. Mr. Woods/Macon was seen by Dr. Chico[2] at some point, although he does not say when the appointment occurred. During that appointment, he was told he would receive medication, but he never received the medication. He was also told there would be a follow up appointment, but it never occurred.

---

[2] Dr. Chico is not a defendant in this case.

On April 4, 2021, Mr. Woods/Macon was again seen by Dr. Marthakis. Mr. Woods/Macon asked her to order an MRI or CAT scan because a nurse had told him these may be useful. Dr. Marthakis would not order those tests, but she did order a stool test. The test was performed, and Mr. Woods/Macon met with Tiffany Turner on April 13, 2022, regarding the results of the test. Ms. Turner told Mr. Woods/Macon that the stool test was normal. At some point, Diane Thews ordered an ultrasound; it is unclear from the complaint when this occurred. On May 13, 2022, Mr. Woods/Macon saw Dr. Marthakis to review the ultrasound results. She said the ultrasound was pretty much normal. The report, however, says that there is a small (5mm) right epididymal head cyst and right epididymal appendage. It is unclear, however, what an incidental finding of an epididymal cyst has to do with his alleged parasite infection. Dr. Marthakis offered to order another stool test, but Mr. Woods/Macon declined.

Mr. Woods/Macon has, at best, alleged that the various medical staff involved in his care were negligent. Mr. Woods/Macon is not a medical provider and cannot determine what tests are appropriate or demand that those tests be performed. He has not pleaded facts from which it can be plausibly inferred that any medical defendant substantially departed from an accepted professional judgment, practice, or standard or did not base their decisions on their medical judgment, even if flawed. Accordingly, he cannot proceed against Provider Diane, Nurse Lacey R. Gorske, Todd Wolford, Dr. Martin, Dr. Marthakis, or Diane Thews.

Mr. Woods/Macon also complains about the manner that grievances related to his medical care and other matters were handled by several individuals. Grievances were

allegedly not handled in accordance with the prison's policies. Violations of prison policies, however, do not amount to constitutional violations. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("However, 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices."). Additionally, Mr. Woods/Macon has no constitutional right to access the grievance process. *See Grieveson v. Anderson*, 538 F.3d 763, 770 (7th Cir. 2008) (noting that there is not a Fourteenth Amendment substantive due process right to an inmate grievance procedure). Therefore, he may not proceed on any claim that his grievances were ignored, wrongly denied, lost, or otherwise mishandled.

Mr. Woods/Macon appears to be suing several defendants merely because they are supervisors of other alleged wrongdoers or because he wrote them letters telling them about his problems and they took no steps to remedy his concerns. There is no general *respondeat superior* liability under 42 U.S.C. § 1983, and defendants cannot be held liable simply because they employed or supervised the alleged wrongdoer. *See Burks v. Raemisch*, 555 F.3d 592, 594-96 (7th Cir. 2009) ("[P]ublic employees are responsible for their own misdeeds but not for anyone else's."). Therefore, he cannot proceed against any defendant merely because they knew of his allegations of wrongdoing by others.

Some of the allegations in Mr. Woods/Macon's complaint are trivial. For example, he complains that Pam James, the legal liaison, has not permitted him to get witness statements from certain officers even when those officers had indicated they were willing to provide statements. Mr. Woods/Macon has no constitutional right to such statements. He also complains that Ms. James kept papers that he sent to her without issuing a

7

confiscation slip. He has no constitutional right to have papers he sends to someone returned to him. He complains that, during the medical examination on January 13, 2022, Todd Wolford would not permit his handcuffs to be removed and lied by saying that everyone was being cuffed when several inmates were not cuffed. "[P]rison officials have broad administrative and discretionary authority over the institutions they manage." *Westefer v. Neal*, 682 F.3d 679 (7th Cir. 2012) (quotation marks, brackets, and citations omitted). Whether a prisoner should be handcuffed at any given time is not the type of decision that court's concern themselves with. Mr. Woods/Macon also describes some unprofessional behavior on the part of a guard during the January 13, 2022, appointment; his complaints of a parasite infection were not taken seriously, and Mr. Woods/Macon noticed the guard chuckling. Similarly, Mr. Woods/Macon complains that it was cold on January 13, 2022, and the guard escorting him out while handcuffed did not take time to zip his coat or put his hat on his head. "Not every wrong committed under color of law, however, is offered redress by the Constitution[.]" *Leslie v. Doyle*, 125 F.3d 1132, 1138 (7th Cir. 1998). Such is the case here.

Other allegations are vague and seemingly unrelated to the claims regarding his parasite infection. Mr. Woods/Macon claims that, on December 22, 2021, while being led to MSU following the alleged administration of Narcan, Sgt. Bauer "grinded his knuckles into [his] chest with so much force that [he] fell to [his] knees three times." ECF 2 at 10. It is unclear how this is related to Mr. Woods/Macon's claims regarding inadequate medical care for an alleged parasite infection. "Unrelated claims against different defendants belong in different suits[.]" *George v. Smith*, 507 F.3d 605, 607 (7th Cir.

8

2007); *see also Owens v. Evans*, 878 F.3d 559, 566 (7th Cir. 2017).[3] It is also unclear how Sgt. Bauer's grinding of his knuckles into Mr. Woods/Macon's chest while leading him to the medical department caused him to fall to his knees three times.

Likewise, Mr. Woods/Macon alleges that Lt. Castaneda violated his due process rights during a DHB process, but he does not explain how this relates to his other allegations. He also does not indicate what offense he was charged with, whether he was found guilty, what sanctions were imposed, whether those sanctions were suspended, or how his due process rights were violated.

Mr. Woods/Macon has also named Centurion Healthcare Services as a defendant. However, "a private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights." *Johnson v. Dossey*, 515 F.3d 778, 782 (7th Cir. 2008). Because Mr. Woods/Macon's factual allegations against Centurion Healthcare Services are based only on the alleged poor decisions that its staff made in connection with his care, he cannot proceed against Centurion Healthcare Services.

Mr. Woods/Macon has also named the Indiana Department of Correction as a defendant, because it has not ensured its employees "are doing their jobs in an ordinary skillful way anyone that maintains guardianship over a person(s) should." ECF 2 at 12.

---

[3] When presented with unrelated claims, the court can properly limit a case by picking a claim (or related claims) for the plaintiff, because "[a] district judge [can] solve the problem by . . . dismissing the excess defendants under Fed.R.Civ.P. 21." *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012). Alternatively, the court can split the unrelated claims because "[a] district judge [can] solve the problem by severance (creating multiple suits that can be separately screened) . . .." *Id*. Another option is to notify the plaintiff and allow him to decide which claim (or related claims) to pursue in the instant case – as well as to decide when or if to bring the other claims in separate suits. *Id*. This is the fairest solution because "the plaintiff as master of the complaint may present (or abjure) any claim he likes." *Katz v. Gerardi*, 552 F.3d 558, 563 (7th Cir. 2009).

The Eleventh Amendment generally precludes a citizen from suing a State or one of its agencies or departments in federal court. *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001). There are exceptions to Eleventh Amendment immunity, but none are applicable here. *See MCI Telecommunications Corp. v. Ill. Commerce Comm'n*, 183 F.3d 558, 563 (7th Cir. 1999); *Joseph v. Bd. of Regents of Univ. of Wis. Sys.*, 432 F.3d 746, 748 (7th Cir. 2005). Because the State is immune from suit pursuant to the Eleventh Amendment, Mr. Woods/Macon cannot proceed against the Indiana Department of Correction.

Finally, Mr. Woods/Macon seeks relief that is unavailable through a federal civil rights lawsuit. He is not entitled to the investigation or termination of those he alleges have engaged in wrongful conduct. *Lee v. Kennedy*, No. 19-CV-1277, 2019 WL 5196372, at *1 (C.D. Ill. Oct. 15, 2019) ("Further, Plaintiff does not have a freestanding constitutional right to the investigation into another's alleged wrongful activity.") (citing *Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015)).

The Federal Rules of Civil Procedure require that Mr. Woods/Macon present his claims with sufficient clarity "to avoid requiring a district court or opposing party to forever sift through its pages" to determine whether it states a claim. *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990); *see also United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) (federal pleading standards "require[] parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud"). To this end, Rule 8 of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Mr. Woods/Macon's complaint is

neither short (thirteen single spaced pages and an additional 155 pages of exhibits) nor plain. The way he has drafted the complaint is cumbersome and makes it difficult for the court and the Defendants to discern the exact contours of his claims. Mr. Woods/Macon is not required to include every potentially relevant fact or prove his claims at this stage, but he must set forth a plausible grievance. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009).

This complaint does not state a claim for which relief can be granted. Nevertheless, Mr. Woods/Macon may file an amended complaint if he believes he can state a claim based on (and consistent with) the events described in this complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). If Mr. Woods/Macon decides to file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form and complete that form.[4] The form is available in the prison law library. After Mr. Woods/Macon properly completes that form addressing the issues raised in this order, he needs to send it to the court.

For these reasons, the court:

(1) GRANTS Martez Rose'man Woods/Macon until **July 15, 2022**, to file an amended complaint; and

---

[4] N.D. Ind. L.R. 7-6, requires that Mr. Woods/Macon use the **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form. The use of a standardized form allows this court to efficiently gather and review the information necessary to justly adjudicate cases.

(2) **CAUTIONS** Martez Rose'man Woods/Macon if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED.

June 17, 2022                                                 *s/ Damon R. Leichty*
                                                                                   Judge, United States District Court